IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JENNIFER M. GABALDON,

      Plaintiff,

v.                                                          No. CV 16-769 CG

NANCY A. BERRYHILL,
Acting Commissioner of the Social Security
Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court upon Plaintiff Jennifer M. Gabaldon's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 16), filed January 25, 2017; Defendant Commissioner Nancy A. Berryhill's *Defendant's Response to Plaintiff's Motion to Reverse and Remand the Agency's Decision* (the "Response"), (Doc. 18), filed March 21, 2017; and Plaintiff's *Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing* (the "Reply"), (Doc. 19), filed April 4, 2017.

On February 13, 2013, Ms. Gabaldon filed an application for disability insurance benefits alleging disability beginning on February 6, 2013. (Administrative Record ("AR") 119). Her application was denied initially on May 10, 2013, (AR 95-101), and also upon reconsideration. (AR 102-115). Ms. Gabaldon filed a request for a hearing before an Administrative Law Judge ("ALJ") on June 11, 2013, (AR 144), and a hearing was held on February 26, 2015 before ALJ Donna Montano. (AR 61-94). At the hearing, Ms. Gabaldon and Pamela A. Bowman, an impartial vocational expert ("VE") testified. (AR 119). Ms. Gabaldon was represented at the hearing by William P. Gordon. (AR 119).

ALJ Montano issued her opinion on July 1, 2015, finding that Ms. Gabaldon was not disabled under 20 C.F.R. § 404.1520(g). (AR 130). Ms. Gabaldon filed an application for review by the Appeals Council, (AR 57-60), which was denied, (AR 1-7), making the decision of ALJ Montano the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Through new counsel, Michael Armstrong, Ms. Gabaldon filed an appeal with this Court. (Doc. 1). Ms. Gabaldon argues that the ALJ failed to incorporate portions of the medical opinion of state agency medical consultant Charles Bridges, Ph.D., into Ms. Gabaldon's residual functional capacity ("RFC"). (Doc. 16 at 2).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. In addition, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to properly analyze Dr. Bridges' opinion, the Court finds that the Motion should be **GRANTED** and the case be **REMANDED** for further proceedings.

   I.   **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760

(10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.    Applicable Law and Sequential Evaluation Process**

For purposes of disability insurance benefits, a person establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

3

less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established to determine whether a person is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)-(iv), 416.920(a)(4)(i)-(iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, he will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering her RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Ms. Gabaldon applied for disability insurance benefits due to post traumatic stress disorder ("PTSD"), panic disorder, and major depression. (AR 234). At step one, the ALJ determined that Ms. Gabaldon had not engaged in substantial gainful activity since February 6, 2013, the alleged onset date. (AR 121). At step two, the ALJ concluded that Ms. Gabaldon was severely impaired by affective disorder, anxiety disorder, marijuana dependence, and alcohol dependence. (AR 121). At step three, the

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

ALJ explained that she considered whether Ms. Gabaldon's impairments met or satisfied any of the listed impairments. (AR 122-123). The ALJ determined that none of Ms. Gabaldon's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (AR 122).

The ALJ proceeded to step four. She analyzed Ms. Gabaldon's subjective complaints with the objective evidence in the record. (AR 123-128). The ALJ found that Ms. Gabaldon's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (AR 126). The ALJ discussed Ms. Gabaldon's testimony, medical records, as well as a report from Dr. Bridges. (AR 123-128). The ALJ ultimately found that Ms. Gabaldon can perform a full range of work at all exertional levels. (AR 123). However, the ALJ determined that Ms. Gabaldon has nonexertional limitations, specifically, she is able to understand, remember, and carry out simple repetitive tasks, and may have superficial contact with others. (AR 123).

The ALJ determined that Ms. Gabaldon could not perform any of her past relevant work. (AR 128-129). Therefore, the ALJ moved to step five and inquired whether Ms. Gabaldon would be able to perform any other work existing in significant numbers in the national economy. (AR 129-130). The ALJ noted that Ms. Gabaldon was 40 years old on her alleged disability onset date and was classified as a "younger individual" in accordance with the Regulations. (AR 129). The ALJ also determined that Ms. Gabaldon has at least a high school education and is able to communicate in English. (AR 129).

The VE testified that an individual with Ms. Gabaldon's same age, education, work experience, and RFC could perform the jobs of industrial cleaner, odd job worker,

5

and hand cleaner polisher. (AR 130). Based on this analysis, the ALJ concluded that because Ms. Gabaldon is capable of performing work existing in significant numbers in the national economy, she is not disabled pursuant to 20 C.F.R. § 404.1520(g).

IV.     Analysis

Ms. Gabaldon argues that the ALJ failed to incorporate portions of Dr. Bridges' opinion into Ms. Gabaldon's RFC. (Doc. 16 at 2). Specifically, Ms. Gabaldon argues that although the ALJ placed "great weight" on Dr. Bridges' opinion and adopted some of his moderate limitations, she failed to either accept or reject other moderate limitations documented by Dr. Bridges in Section I of the MRFC. (Doc. 16 at 10-15). Further, Ms. Gabaldon states that the ALJ failed to accept or explain why she rejected Dr. Bridges' finding that Ms. Gabaldon is markedly limited in her ability to interact appropriately with the general public. (Doc. 16 at 12).

The Commissioner responds that the ALJ's decision is supported by substantial evidence and free of harmful legal error. (Doc. 18 at 2). The Commissioner maintains that Dr. Bridges translated the limitations outlined in Section I of the MRFC into a specific opinion as to Ms. Gabaldon's RFC in Section III and that the ALJ's RFC is consistent with Dr. Bridges' narrative conclusions. (Doc. 18 at 7-10). According to the Commissioner, the limitation to superficial contact with others "necessarily includes the general public and accommodated the noted marked limitation in interacting appropriately with the general public." (Doc. 18 at 10). Finally, the Commissioner acknowledges that the ALJ did not adopt Dr. Bridges' finding that Ms. Gabaldon needs a supportive supervisor; however, the Commissioner argues that the ALJ gave the opinion "great – not controlling weight – and set forth a very restrictive [MRFC], but was

6

not required to adopt *all* portions" of the opinion "verbatim." (Doc. 18 at 10) (emphasis in original) (citing *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir 2004)).

The issues in this case turn on the difference between Section I and Section III of the MFRC, which the Tenth Circuit has discussed at length in unpublished decisions. *See Carver v. Colvin*, No. 14-5056, 600 Fed. Appx. 616 (10th Cir. Jan. 20, 2015) (unpublished). In *Carver*, the claimant argued that the ALJ failed to incorporate all of the limitations assessed in a non-examining State Agency physician's MRFC because the Section I limitations were left out of the RFC while the Section III limitations were included verbatim. The Tenth Circuit explained that Section I "is for recording summary conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Id*. at 618 (quotations and alterations omitted). That language is consistent with the Social Security Administration's Program Operations Manual System ("POMS"), which "provides that Section III of the MRFC, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment." *Id*. at 618-19 (discussing POMS DI 25020.010 B.1., POMS DI 24510.060 B.4.a., and POMS DI 24510.065 A.). However, the degree and extent of the capacity or limitation found in Section I must be described in narrative format in Section III. *Id*. at 619 (citing POMS DI 24510.063 B.2.).

Further, "[t]he POMS also provides that the discussion of all mental capacities and limitations in Section III must be in narrative format, and that Section III is for explaining the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id*.

7

(quotations omitted). The Tenth Circuit observed that if a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability . . . the [MRFC] cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* (citing *Gorringe v. Astrue,* 898 F. Supp. 2d 1220, 1224-25 (D. Colo. 2012), and *Baysinger v. Astrue,* No. 11-cv-00333–WYD, 2012 WL 1044746, at *5-6 (D. Colo. Mar. 28, 2012) (unpublished)).

Applying these principles in *Carver*, the Tenth Circuit found that the consultant's Section III narrative "adequately encapsulated" his Section I finding that the claimant had a moderate limitation in his ability to accept instructions and respond appropriately to supervisor criticism. *Id.* In Section III, the consultant opined that the claimant could "relate to supervisors and peers on a superficial work basis" and in a work scenario involving only "simple tasks with routine supervision." *Id.* The Court determined that these statements adequately explained the effects of a moderate limitation in the claimant's ability to accept instructions and respond appropriately to supervisor criticism, because "the ALJ sufficiently captured the essence of the Section III functional limitations by stating that Carver could understand, remember, and carry out simple instructions in a work-related setting and could interact with co-workers and supervisors, under routine supervision." *Id.* at 619-20. The Tenth Circuit reasoned that interacting with supervisors in the course of routine supervision over simple work was "tantamount" to the "superficial" interaction encountered in such jobs, and refused to "parse the ALJ's language too finely." *Id.* at 620.

In this case, Dr. Bridges performed a Mental Residual Functional Capacity Assessment ("MRFC") of Ms. Gabaldon's impairments. (AR 107-113). Dr. Bridges

8

diagnosed Ms. Gabaldon with affective disorders, anxiety disorders, and substance addiction disorders. (AR 107). In Section I of the MRFC, Dr. Bridges found that Ms. Gabaldon is moderately limited in her ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) work in coordination or in proximity to others without being distracted by them; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (9) respond appropriately to changes in the work setting. (AR 110-111). Dr. Bridges also found that Ms. Gabaldon is markedly limited in her ability to interact appropriately with the general public. (AR 111).

In Section III of the MRFC, Dr. Bridges further explained several of these limitations in narrative form. As to Ms. Gabaldon's sustained concentration and persistence capacities, Dr. Bridges stated Ms. Gabaldon "requires a work setting where distractions are minimal. She can carry out simple tasks for a normal workday over a normal workweek." (AR 111). For social interactional capacities, Dr. Bridges noted that Ms. Gabaldon "can interact appropriately with coworkers and supervisors on a superficial basis. She requires a supportive supervisor." (AR 111). Finally, Dr. Bridges specified that Ms. Gabaldon's depression affects "her concentration and memory" and limits her "ability to carry out detailed tasks. Her PTSD and anxiety is affecting [her]

9

ability to interact with others. She can adapt to a work situation with minimal changes." (AR 112).

The ALJ stated that she "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (AR 123). In her decision, the ALJ discussed the findings of Dr. Bridges and gave his opinion "great weight." (AR 127-128). However, the ALJ translated Dr. Bridges' findings into only two nonexertional limitations: understanding, remembering, and carrying out simple, repetitive tasks, and having only superficial contact with others. (AR 123).

First, the Court agrees that the ALJ captured Dr. Bridges' finding that Ms. Gabaldon's depression affects her "concentration and memory" and limits her "ability to carry out detailed tasks" by limiting Ms. Gabaldon to being able "to understand, remember, and carry out simple repetitive tasks." (AR 112, 123). Although Dr. Bridges found Ms. Gabaldon to be moderately limited with regard to persistence, he also noted that "[s]he can carry out simple tasks for a normal workday over a normal workweek." (AR 110-111). The Court also agrees that the ALJ captured Dr. Bridges' finding that Ms. Gabaldon "can interact appropriately with coworkers and supervisors on a superficial basis" by limiting her to "superficial contact with others." (AR 111, 123).

The Court does not, however, agree that the ALJ properly captured Dr. Bridges' Section III finding that Ms. Gabaldon "requires a work setting where distractions are minimal," that "[s]he requires a supportive supervisor," or Dr. Bridges' Section I finding that she has a marked limitation in her ability to interact with the general public. (AR 111). The ALJ simply does not address these three limitations. Although the Commissioner is correct that the ALJ does not have to adopt all of Dr. Bridges' findings,

it is well-settled that "[t]he ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) (internal citations omitted). The ALJ stated that she placed "great weight" on Dr. Bridges' opinion, which included requiring minimal distractions, a supportive supervisor, and no interaction with the general public; however, these limitations are not reflected in the ALJ's RFC finding. The ALJ seems to have implicitly rejected those findings, and therefore inappropriately "'us[ed] portions of evidence favorable to [her] position while ignoring other evidence.'" *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citing *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004)). This selective application of Dr. Bridges' report without explanation is error, and requires a remand in order for the ALJ to explain the evidentiary basis for her RFC determination. *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007).

      The Commissioner argues that the limitation to "superficial contact with others" encompasses both the finding that Ms. Gabaldon is moderately limited in her ability to interact with coworkers and supervisors and the finding of a marked limitation in her ability to interact with the general public. The Court finds this argument unavailing. Moderate impairments may decrease a claimant's ability to perform work. *Bowers v. Astrue*, No. 07-5114, 271 Fed. Appx. 731, 733–34 (10th Cir. Mar. 26, 2008) (unpublished). By comparison, a marked limitation means an individual "cannot usefully perform or sustain" an activity. POMS DI 24.510.063(3). The difference in the severity of these limitations is not reflected in the ALJ's RFC.

11

The Commissioner cites *Smith v. Colvin* for the proposition that the ALJ did not need to discuss Dr. Bridges' Section I findings because the ALJ relied on the Section III narrative. 821 F.3d 1264, 1269 (10th Cir. 2016); *see also Sullivan v. Colvin*, No. 12-5147, 519 Fed. Appx. 985, 989 (10th Cir. March 13, 2013) (unpublished). However, *Smith* does not support that argument. In *Smith*, the Tenth Circuit held the ALJ's RFC adequately incorporated all of the claimant's functional limitations. *Id*. The Tenth Circuit did not base its holding on the fact that the ALJ relied on Section III rather than Section I. Further, a discrepancy between Sections I and III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." *Lee v. Colvin*, No. 15-6027, 631 Fed. Appx. 538, 541 (10th Cir. Nov. 12, 2015) (unpublished). This necessarily extends to marked limitations. Thus, although the Section III narrative did not describe the effect of the Section I marked limitation, the ALJ should not have "turn[ed] a blind eye" to the limitation.

Finally, the Commissioner argues that unskilled work, which the ALJ found Ms. Gabaldon can perform, primarily involves working with things rather than people. (Doc. 18 at 10) (citing 20 C.F.R. pt. 404. subpt. P, app. 2, §§ 201.00(i), 202.00(g)). A limitation to unskilled work does not necessarily address an individual's mental limitations. *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)). Unskilled work "just account[s] for issues of skill transfer, not impairment of mental functions – which 'are not skills but, rather, general prerequisites for most work at any skill level.'" *Chapo*, 682 F.3d at 1290 n.3 (quoting *Wayland v. Chater*, No. 95-7029, No. 95-7059, 76 F.3d 394, *2 (10th Cir. Feb. 7, 1996)

(unpublished)). "[W]hile there may be circumstances in which a particular mental limitation could be so obviously accommodated by a reduction in skill level that particularized vocational evidence addressing that limitation might be dispensed with, that is clearly not the case here." *Wayland*, 76 F.3d at *2. A marked impairment in Ms. Gabaldon's ability to interact with the general public could affect jobs that do not primarily involve working with people. Without analysis from the ALJ or the VE, the Court cannot say that limiting Ms. Gabaldon to unskilled work would accommodate her marked limitation in being able to interact with the general public. Therefore, the case must be remanded.

###    V.     Conclusion

For the reasons discussed above, the Court concludes that the ALJ failed to properly analyze Dr. Bridges' medical opinion. On remand, the ALJ should either incorporate or explain why she has not incorporated Dr. Bridges' opinion.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 16), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE